UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS PORT | ) | |
| AUTHORITY and DENNIS KAY, | ) | |
| | ) | |
| Interpleader Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 12-10259-JGD |
| | ) | |
| WILLIAMS MARITIME REPAIR | ) | |
| SERVICE, INC., et al., | ) | |
| | ) | |
| Interpleader Defendants. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON
# MOTION OF UNITED STATES FOR SUMMARY JUDGMENT

March 29, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is an action in interpleader to resolve competing claims to disputed funds of

Williams Maritime Repair Service, Inc. ("Williams").  These "Interpleader Funds," which

are the proceeds of a settlement reached between Williams and the plaintiffs, are being

claimed by two creditors of Williams: the United States, which has federal tax liens as a

result of unpaid employment taxes for the quarterly tax periods ending June 30, 2005

through June 30, 2006, and New England Phoenix Company, Inc. ("NEPCO"), which is

the assignee of a security interest in Williams' property originally granted to Sovereign

Bank, as evidenced by a UCC financing statement filed with the Massachusetts Secretary

of State on August 19, 2003 and subsequently continued on March 19, 2008.  This matter

is presently before the court on the United States' Motion for Summary Judgment (Docket No. 41) pursuant to which the United States is seeking a ruling that it is entitled to the distribution of the Interpleader Funds, as its lien is senior to NEPCO's lien. NEPCO opposes the motion.

For the reasons detailed herein, this court finds that to the extent the Interpleader Funds are the result of a contractual obligation owed to Williams, NEPCO's lien is senior to the Government's tax lien. The record is insufficient at this time, however, to determine how much of the Interpleader Funds are so designated, and additional proceedings will be necessary. The motion of the United States for summary judgment is DENIED.[1]

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>The Source of the Interpleader Funds</u>

In 2008, Williams brought suit against Massachusetts Port Authority ("Massport") and Dennis Kay, Massport's former Deputy Port Director and subsequent Operations Manager at the Conley Terminal, in the Commonwealth of Massachusetts, Suffolk Superior Court, Civil Action No. 08-2509. (US Ex. 2). Therein, Williams alleged that

---

[1]  Pursuant to this court's order of August 28, 2012, a senior attorneys' lien has already been satisfied from the Interpleader Funds. Interpleader-Defendant Richard F. Meyer, in his capacity as Plan Administrator of the various BSA Funds, has acknowledged that the lien of the United States is senior to the Funds' liens and that there will be no money remaining to pay to the BSA Funds if the motion for summary judgment is allowed. (<u>See</u> Docket No. 47). Since, however, the motion is denied, the Funds have reserved their right to claim an interest in the Interpleader Funds.

[2]  The facts are derived from the Statement of Material Facts of Record submitted by the United States (Docket 42) ("USF") and exhibits thereto ("US Ex."), and the Statement of Facts submitted by NEPCO (Docket No. 46) ("NF") and exhibits thereto. ("NEPCO Ex.").

Massport wrongfully terminated its contract with Williams and seized Williams' assets. (See id. at Introduction).  The complaint included numerous claims, which, after a ruling on cross-motions for summary judgment, were reduced to claims for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and conversion.  (US Ex. 3; USF ¶¶ 3, 4).  The contract allegedly breached was an operating agreement, effective October 1, 2004, that granted Williams the right to perform certain repairs on Massport's property.  (USF ¶ 5).  Prior to that time, Williams had worked on Massport's property without a written contract.  (Id.).

The case was settled pursuant to a settlement agreement dated January 12, 2012. (US Ex. 1).  Pursuant to the settlement, Massport agreed to pay $250,000.00 in full settlement of William' claims, and Massport agreed to bring an Interpleader action in this court so that the U.S. District Court would "adjudicate the legal rights to the $250,000 Settlement Amount including to whom, and when, Massport should pay the Settlement Amount."  (Id.).  On August 28, 2012, this court ordered the payment of $124,477.72 to the law firm of Belcher and Fitzgerald, which this court ruled had a senior attorneys' lien. (Docket No. 48).  Therefore, $125,522.28 remains in dispute.

## Claims of NEPCO

On August 7, 2003, Williams signed and delivered a $100,000.00 commercial promissory note payable to Sovereign Bank.  (NF ¶ 1; NEPCO Ex. 9).  On August 7, 2003, to secure its payment obligations, Williams executed a Security Agreement granting Sovereign Bank "a lien and security interest in and to all of Debtor's tangible

and intangible personal property, including, but not limited to, all of Debtor's accounts,

. . . receivables, . . . payment intangibles, . . . contract rights . . .  whether now owned or

hereafter acquired . . . ."  (NEPCO Ex. 10).

Sovereign Bank filed a UCC financing statement with the Massachusetts Secretary

of State on August 19, 2003 and a continuation was filed on March 19, 2008.  (USF ¶ 13;

US Exs. 6-7).  The UCC financing statement specifies that it covers the following

collateral:

> All inventory, chattel paper, accounts, equipment and general
> intangibles; whether any of the foregoing is owned now or acquired
> later; all accessions, additions, attachments, parts, tools, supplies,
> increases, replacements, and substitutions relating to any of the
> foregoing; all records of any kind relating to any of the foregoing; all
> proceeds relating to any of the foregoing (including insurance,
> general intangibles, instruments, rents, monies, payments and other
> proceeds).

(US Ex. 6; USF ¶ 14).

On August 25, 2009, Sovereign Bank assigned the promissory note to NEPCO.

(NF ¶ 3).  NEPCO then filed a UCC-3 assignment making it the holder of record of the

security interest.  (US Ex. 8; see Docket No. 26-1 (UCC filing history)).

## The Tax Liens

Williams failed to pay its quarterly federal employment taxes (Form 941) for the

quarterly tax periods ending June 30, 2005; September 30, 2005; December 31, 2005;

March 31, 2006; and June 30, 2006.  (USF ¶ 8).  Notices of Federal Tax Liens were filed

with this court on March 14, 2006 for the first two missed quarters, September 7, 2006

for the next two missed quarters, and October 12, 2006 for the last missed quarter.  (USF ¶ 10; US Ex. 5).  As of July 19, 2012, $426,956.81 was due and owing.  (USF ¶ 9).

## III.   ANALYSIS

### A.   Overview

"Where there are competing claims to a delinquent taxpayer's property by a federal tax lien and a state-law lien, priority is determined by federal law."  Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F. Supp. 337, 342 (D. Mass. 1994) (citing Aquilino v. United States, 363 U.S. 509, 513-14, 80 S. Ct. 1277, 1280, 4 L. Ed. 2d 1365 (1960)).  "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'"  United States v. McDermott, 507 U.S. 447, 449, 113 S. Ct. 1526, 1528, 123 L. Ed. 2d 128 (1993) (quoting United States v. New Britain, 347 U.S. 81, 85, 74 S. Ct. 367, 370, 98 L. Ed. 520 (1954)).  In this analysis, "state law controls in determining the nature of the legal interest which the taxpayer had in the property[.]"  Aquilino, 363 U.S. at 513, 80 S. Ct. at 1280.  However, as the Supreme Court has explained, "once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'"  Id. at 513-14, 80 S. Ct. at 1280 (internal citation omitted).

Pursuant to the Federal Tax Lien Act ("FTLA"), 26 U.S.C. §§ 6321 *et seq.*, when a taxpayer fails to pay his or her taxes, the United States is granted a lien "upon all property

and rights to property, whether real or personal, belonging to such person." 26 U.S.C. §

6321. "The lien also attaches to property acquired by the delinquent taxpayer after the

initial imposition of the lien" and remains in effect until the lien is satisfied or a judgment

for amounts due becomes unenforceable due to the passage of time. Plymouth Sav. Bank

v. United States, 187 F.3d 203, 206 (1st Cir. 1999); 26 U.S.C. § 6322. Although the lien

arises at the time the tax assessment is made, a federal tax lien becomes valid as against a

holder of a security interest in the same property only upon the Government's filing of a

notice of lien. See 26 U.S.C. §§ 6322, 6323(a). In the instant case, the notices of the

federal tax liens were filed in 2006. Therefore, if NEPCO's lien over the Interpleader

Funds was perfected before that time, NEPCO's lien would have priority.

"In order for a state created lien to take priority over a later assessed federal lien, it

must be 'choate' or 'perfected' so that 'the identity of the lienor, the property subject to

the lien, and the amount of the lien are established' prior to the filing of the subsequent

federal lien." Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228,

1234-35 (1st Cir. 1996) (quoting United States v. New Britain, 347 U.S. at 84, 74 S. Ct.

at 369)). "Choateness of a state created lien is a matter of federal law" and the standard

of choateness applicable to state created liens is the same as those applicable to tax liens

asserted by the government. Id. at 1235 (citing United States v. First Nat'l Bank & Trust

Co., 386 F.2d 646, 647-48 (8th Cir. 1967) (additional citations omitted)). In the instant

case, the parties' dispute centers around whether the Interpleader Funds were in existence

as "property subject to the lien" before or after the federal tax lien notices were filed. As

detailed below, this court finds that to the extent that the settlement amount paid by

Massport reflected payments for work performed pursuant to the October 1, 2004

contract, it existed and was subject to the Bank's lien prior to the filing of the

Government's tax lien notices, and it has priority over the Government's tax liens.

However, amounts paid in settlement of other causes of action do not.

### B.      Extent of NEPCO's Security Interest

The Government contends that NEPCO's security interest is limited to property in

which Williams had an interest as of August 19, 2003, the date it granted the security

interest to Sovereign Bank.  (See Gov't Mem. (Docket No. 42) at 8).  In support of this

argument the United States cites to the definition in the Code of "security interest," which

provides that "[a] security interest exists at any time (A) if, at such time, *the property is in*

*existence* and the interest has become protected under local law against a subsequent

judgment lien arising out of an unsecured obligation . . . ."  26 U.S.C. § 6323(h)(1)

(emphasis added).  However, there is nothing in this provision which negates the Bank's

security interest in after-acquired property, i.e., property "now owned or hereafter

acquired[.]"  (NEPCO Ex. 10 (Security Agreement); see also US Ex. 6 (UCC Financing

Statement (covering property that "is owned now or acquired later")))).  In fact, security

interests in after-acquired property are well-established and enforceable.  As the Supreme

Court recognized in McDermott, the case on which the United States relies in this matter,

under the Uniform Commercial Code, "a security interest in after-acquired property is

generally not considered perfected when the financing statement is filed," but, rather, is

considered perfected "when the security interest has attached to particular property upon the debtor's acquisition of that property." McDermott, 507 U.S. at 452, 113 S. Ct. at 1529.  Similarly, in McDermott itself the Court held that the Bank's security interest in after-acquired property attached when the property was acquired – the Bank was not limited to property owned as of the date of the security agreement.  Id. at 453, 113 S. Ct. 1530 (recognizing that both state and federal liens attached to after-acquired property at the time when the property was acquired).  Section 6323(h)(1) merely confirms the principle that a security interest in after-acquired property is enforceable, but does not attach to property until the property has been acquired.  There is no merit to the Government's contention that the Bank's security interest was limited to the property in existence on the date that the Security Agreement was signed.

Therefore, the issue remains whether any of the Interpleader Funds were in existence prior to the Government's tax lien.  On this issue, the First Circuit case of Plymouth Savings Bank is controlling.  There, the question raised was whether a Bank's security interest in after-acquired property had priority over a tax lien when the debtor entered into an employment agreement before the federal lien took priority over a state lien, but was not paid until after the federal tax lien was perfected.[3]  Plymouth Savings

---

[3]  In Plymouth Savings Bank, an employment agreement was signed after the tax lien was perfected, but within the time set forth in the safe harbor provision of 26 U.S.C. § 6323(c) which, as discussed infra, is a period in which a state lien takes priority over a federal lien even though the state lien is perfected after the federal lien.  NEPCO's claim is much more straightforward than the claim at issue in Plymouth Savings Bank since Williams' operating agreement went into effect years before the federal tax lien was perfected, making the safe harbor analysis unnecessary.

Bank, 187 F.3d at 207.  The Court found that the debtor "acquired the right to be paid for services to be rendered in the future at the time she entered into [the employment] contract."  Id.  After analyzing the regulatory scheme and legislative history, the Court held that "contract rights *and* the proceeds thereof are acquired *at the time the parties enter into the contract*."  Id. at 209 (emphasis added).  Therefore, the Bank's security interest in the payment made under the contract took priority over the federal tax liens, even though payment was not received until after the federal tax liens were perfected.  Id.  In the instant case, Williams entered into its contract with Massport on October 1, 2004, before the federal tax liens were in existence.  Since, under the reasoning of the Court in Plymouth Savings Bank, the payment under the contract is deemed to have been acquired by Williams at the time the contract was entered into, NEPCO's security interest has priority over that portion of the January 12, 2012 settlement attributable to contract payments.  See also In re Reitter Corp., 449 B.R. 641, 650 (Bankr. D.P.R. 2011), aff'd, 475 B.R. 314 (D.P.R. 2012) ("if the 'qualified property' (collateral) is a contract right, the proceeds generated from those rights are acquired by the taxpayer at the time the contract is made").[4]

_____

In both Plymouth and the instant case, the debtor's contract was signed before the federal tax lien would take priority, and payment was received afterwards.

[4]  The Government argued that Plymouth Savings Bank was not applicable to the instant case because the contract in Plymouth was more straightforward and called for the payment of a sum certain unlike the operating agreement here.  However, there is nothing in Plymouth which indicates that these facts were relevant to the court's analysis.  Moreover, the Government has not explained how the type of contract would affect the court's statutory analysis.

McDermott, relied on by the Government, does not require a different result.  In McDermott, a judgment creditor had a lien on after-acquired property which was recorded prior to a federal tax lien.  After both liens were filed, the debtor purchased real property.  The court held that, consistent with the Uniform Commercial Code which provides that a security interest in after-acquired property is deemed to attach to a particular property only when the property is acquired, the judgment lien and the federal tax lien were perfected at the time the real property was acquired.  McDermott, 507 U.S. at 451-53, 113 S. Ct. at 1529-30.  It was only at the time of acquisition that the "property subject to the lien" could be identified and the lien could attach to specific property.  Id. at 449, 113 S. Ct. at 1528.  The Court went on to hold that since both liens were perfected at the same moment when the property was acquired, under the statutory scheme the federal tax lien was to be given priority.  Id. at 453-55, 113 S. Ct. at 1530-31.

The First Circuit's decision in Plymouth Savings Bank is consistent with McDermott.  The Court in Plymouth Savings Bank decided when payment under a contract was acquired by the debtor, and held that it was acquired at the time the contract was signed.  McDermott did not address the question when property was acquired – there was no question that the real property was acquired after the liens had been recorded.  Both cases found the date of acquisition of the property to be controlling.  In the instant case, since the proceeds of Williams' contract were acquired by Williams when the contract was signed, NEPCO's security interest in the proceeds of the contract takes priority over the federal tax lien.

-10-

**Tort Proceeds**

The next issue which must be addressed is whether NEPCO has a security interest in the settlement proceeds to the extent that they are proceeds of commercial tort claims.[5] This court concludes that it does not.  NEPCO's security agreement does not cover tort claims, and to the extent that NEPCO is seeking to assert an interest in the "proceeds" of the tort claims, such proceeds were acquired after the federal tax liens were recorded.

The relevant law is clearly described in In re American Cartage, Inc., 656 F.3d 82 (1st Cir. 2011).  As the First Circuit held:

> Under Massachusetts law, commercial tort claims must be described with specificity in a security agreement in order to be considered part of that agreement.  Mass. Gen. Laws ch. 106, § 9-108(e)(1). This requirement places commercial tort claims in stark contrast to other kinds of collateral, which may be defined broadly by type as long as the description, even if not specific, 'reasonably identifies what is described.'  Id. § 9-108(a).  Furthermore, an after-acquired property clause in a security agreement cannot create a security interest in a commercial tort claim.  Id. § 9-204(b)(2).  The claim must already exist when the parties enter into the security agreement. See id. cmt. 4; see also id. § 9-108 cmt. 5.

656 F.3d at 88.  Since the security agreement in the instant case did not mention any claims against Massport, and the claims did not exist at the time the security agreement was signed, NEPCO does not have a security interest in Williams' tort claims against Massport.

---

[5] "Commercial tort claims" are defined under the Uniform Commercial Code as a "claim arising in tort with respect to which: (A) the claimant is an organization[.]"  Mass. Gen. Laws ch. 106, § 9-102(a)(13).  There is no question that Williams' claims against Massport fit into this definition.

NEPCO attempts to avoid this conclusion by arguing that it may have a security interest in the "proceeds" of the settlement of the tort claims.  See NEPCO Mem. (Docket No. 46) at 9.  Assuming, arguendo, that this is correct, based on the record before this court it appears that the proceeds did not come into existence until after the federal tax liens were filed.[6]  Therefore, the federal tax liens have priority over any security interest NEPCO may have in the tort claim proceeds unless such proceeds fall into the "safe harbor" provisions of the Code.  For the reasons detailed herein, this court concludes that the proceeds of the settlement agreement do not so qualify.

### Safe Harbor Provisions

The IRS Code provides that in the case of "qualified property," a state lien may take priority over a federal tax lien even though the property was acquired after notice of the federal tax lien was filed.  See 26 U.S.C. § 6323(c).  NEPCO contends that under this "safe harbor" provision it is entitled to a priority for all amounts of the Interpleader Funds that were not choate at the time of the filing of the notice of the federal tax lien.  For the reasons described below, this court finds this argument unpersuasive.

The safe harbor provisions of § 6323(c) apply to "qualified property covered by the terms of a written agreement entered into before tax lien filing," including a "commercial transactions financing agreement."  26 U.S.C. § 6323(c)(1)(A)(i).  In

---

[6] NEPCO has argued that there may be some tort claims, such as conversion, which may be traceable to conduct prior to the filing of the federal tax liens.  This decision is without prejudice to the amount of funds NEPCO may seek following discovery, and this court is expressing no opinion on the merits of such an argument.

addition, to be "qualified" local law must also provide that the security agreement is superior to a judgment lien arising out of an unsecured obligation.  Id. at § 6323(c)(1)(B). NEPCO contends that Sovereign Bank's loan to Williams met the requirements of a "commercial transactions financing agreement" under § 6323(c)(2)(A)(i) and that, as assignee, it stands in the shoes of the Bank, "deriving the same but no greater rights and remedies than the assignor then possessed[.]"  Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., 452 F.2d 1346, 1357 n.69 (D.C. Cir. 1971), and authorities cited. The parties agree that it is an open question as to whether, under Massachusetts law, the Bank's agreement is superior to a judgment lien arising out of an unsecured obligation, and that issue will not be resolved herein.  Rather, this court will assume that Sovereign Bank's arrangement with Williams qualifies as a commercial transactions financing agreement.  Nevertheless, the safe harbor provision is not applicable in the instant case.

With respect to a commercial transactions financing agreement, the "qualified property" "includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing."  26 U.S.C. § 6323 (c)(2)(B).  Since the settlement was reached and the Interpleader Funds were paid in 2012, more than 46 days after the Government's filing of its notices in 2006, the safe harbor provision does not apply to these funds.  Therefore, NEPCO's security interest has priority in the settlement proceeds only to the extent that the proceeds are derived from Williams' contract with Massport.

### C.   Proof of the Amount of NEPCO's Lien

The Government argues, without citation, that NEPCO cannot recover any portion of the settlement proceeds because it has not established the amount which is attributable to Williams' breach of contract claim.  However, this issue is not presently before the court.  The United States has moved for summary judgment claiming that it is entitled to the full balance of the proceeds because its tax liens have priority over any and all of NEPCO's liens.  Since the United States has failed to establish its priority over all of NEPCO's claims, the motion for summary judgment must be denied.

The record does not contain any facts from which this court can determine how to allocate the proceeds, and the parties are entitled to take discovery on this issue.  While the Government argues that no discovery is appropriate because the settlement discussions are privileged, the record is not that clear.  There may be relevant information that was shared by the parties to the settlement which is not privileged.  It is premature for this court to make this assessment.

This court will schedule a status conference to discuss the timing and scope of discovery.

## IV.  **CONCLUSION**

For all the reasons discussed herein, the United States' Motion for Summary Judgment (Docket No. 41) is DENIED.

＿＿/ s / Judith Gail Dein＿＿＿＿＿＿＿
Judith Gail Dein
U.S. Magistrate Judge

-14-